# EXHIBIT 1

## to

## Notice of Removal



**Commonwealth of Kentucky**
**Office of the Secretary of State**

Alison Lundergan Grimes
Secretary of State

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718

February 26, 2019

NUVEI TECHNOLOGIES INC.
CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808

FROM:   SUMMONS DIVISION
        SECRETARY OF STATE

RE:     CASE NO: 19-CI-00611

COURT:  Circuit Court Clerk
        Fayette County
        120 N Limestone St
        Lexington, KY 40507
        Phone: (859) 246-2141 OR (859) 246-2142

Legal action has been filed against you in the captioned case.  As provided under Kentucky law, the legal documents are enclosed.

**Questions regarding this action should be addressed to:**

    **(1) Your attorney, or**
    **(2) The attorney filing this suit whose name should appear on the last page of the complaint, or**
    **(3) The court or administrative agency in which the suit is filed at the clerk's number printed above.**

The Kentucky Secretary of State has NO POWER to make a legal disposition of this case.  Your responsive pleadings should be filed with the clerk of the court or agency where the suit is filed and served directly on your opposing party.

No copy of future pleadings need be sent to this office unless you wish us to serve the pleading under a particular statute or rule and pay for said service.

---

| | | |
|---|---|---|
| AOC-E-105  Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>CIVIL SUMMONS | Case #: **19-CI-00611**<br>Court:    **CIRCUIT**<br>County: **FAYETTE** |

*Plaintiff,* BREEDERS' CUP LIMITED, ET AL VS. NUVEI TECHNOLOGIES INC., *Defendant*

TO:   **CORPORATION SERVICE COMPANY**
      **251 LITTLE FALLS DRIVE**
      **WILMINGTON, DE 19808**

Memo: Related party is NUVEI TECHNOLOGIES INC.

The Commonwealth of Kentucky to Defendant:
**NUVEI TECHNOLOGIES INC.**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Vincent Riggs*

Fayette Circuit Clerk
Date: **2/20/2019**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

   Date: _____ ; 20 _____          _____
                                                        Served By

                                              _____
                                                          Title

Summons ID: 147912010788362@00000842176
CIRCUIT: 19-CI-00611 Long Arm Statute – Secretary of State
BREEDERS' CUP LIMITED, ET AL VS. NUVEI TECHNOLOGIES INC.

*Presiding Judge: HON. LUCY A. VANMETER (622386)*

Package:000002 of 000024

Package : 000002 of 000024



Page 1 of 1

 *eFiled*

Filed          19-CI-00611   02/20/2019   Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019   /s/Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION NO. ____
CIVIL ACTION NO. 19-CI-_____
*Electronically Filed*

**BREEDERS' CUP LIMITED**                                    **PLAINTIFFS**

**and**

**BREEDERS' CUP PROPERTIES, LLC**

v.                                    **COMPLAINT**

**NUVEI TECHNOLOGIES INC. (F/K/A PIVOTAL PAYMENTS INC.)**
    Serve: **Via Kentucky Secretary of State**
        Corporation Service Company (Registered Agent)
        251 Little Falls Dr.
        Wilmington, Delaware 19808                    **DEFENDANT**

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Come the Plaintiffs, Breeders' Cup Limited and Breeders' Cup Properties, LLC, by

counsel, and for their Complaint against Defendant, Nuvei Technologies Inc. f/k/a Pivotal

Payments Inc., hereby state as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Breeders' Cup Limited ("BCL") is a New York not for profit corporation,

authorized to conduct business in the Commonwealth of Kentucky by the Kentucky Secretary of

State as a foreign corporation, with a principal office address of 215 W. Main St., Suite 250,

Lexington, Kentucky 40507.

2.    Breeders' Cup Properties, LLC ("BCP") is a Delaware limited liability company,

authorized to conduct business in the Commonwealth of Kentucky by the Kentucky Secretary of

State as a foreign limited liability company, with a principal office address of 215 W. Main St.,

Package:000003 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000003 of 000024

Filed          19-CI-00611   02/20/2019   Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019   /s/Vincent Riggs, Fayette Circuit Clerk

Filed          19-CI-00611    02/20/2019       Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019       /s/Vincent Riggs, Fayette Circuit Clerk

Suite 250, Lexington, Kentucky 40507.  Collectively, BCL and BCP are referred to herein as "Breeders' Cup."

3.   Defendant, Nuvei Technologies Inc. f/k/a Pivotal Payments Inc. ("Pivotal") is a Delaware corporation, with a principal office address of 5000 Legacy Drive, Suite 320, Plano, Texas 75024.

4.   Pivotal has transacted business in the Commonwealth of Kentucky and contracted to supply services or goods in this Commonwealth, all in connection with the claims underlying the causes of action herein, and therefore is subject to the jurisdiction of this Court.  Service of process should be made on Pivotal pursuant to KRS 454.210 via the Kentucky Secretary of State on its registered agent for service of process.

5.   This Court is a proper venue for this action under KRS 454.210 because, among other reasons, a substantial part of the acts or omissions giving rise to this dispute occurred in Fayette County, Kentucky and because Breeders' Cup is located in Fayette County, Kentucky.

## FACTUAL ALLEGATIONS

### The Parties

6.   BCL is a not for profit organization existing for the purpose of enhancing Thoroughbred racing through the development of public interest in the sport.  Among other things, BCL hosts the Breeders' Cup World Championships of Thoroughbred racing – a two-day, international racing event attended by the world's leading Thoroughbred horses, trainers, corporate "partners", and patrons, held annually during the first weekend of November at selected host race tracks throughout the United States (the "World Championships").

Package:000004 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000004 of 000024

Filed          19-CI-00611    02/20/2019       Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019       /s/Vincent Riggs, Fayette Circuit Clerk

Filed          19-CI-00611   02/20/2019     Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019     /s/Vincent Riggs, Fayette Circuit Clerk

7.     BCP is an affiliate of BCL and offers media, hospitality, and other benefits to

certain Thoroughbred racing industry sponsors and participants related to BCL and its programs

and events.

8.     Pivotal was, at all times relevant to this Complaint, a provider of credit card

processing services.

### The Agreements

9.     Beginning in and around 2014, Breeders' Cup engaged in negotiations with

Pivotal (whose legal name at the time was Pivotal Payments Inc.) for Pivotal to become a

sponsor (called a "corporate partner" for marketing purposes) and to receive certain corporate

partner and media and hospitality benefits associated with the World Championships.

10.    BCL, BCP, and Pivotal entered into a Corporate Partner and Media Agreement

(the "Agreement"), effective as of October 2, 2014.  A true and correct copy of the Agreement is

attached hereto and made a part hereof as Exhibit 1.

11.    The term of the Agreement commenced as of October 2, 2014 and was to

terminate on January 31, 2020 (the "Term"), unless terminated earlier pursuant to the express

termination provisions provided in Section 5 of the Agreement.

12.    Section 5(d) of the Agreement further provides in pertinent part, however, that:



13.    Under, and for the Term of, the Agreement, Pivotal received corporate partner

rights and benefits (the "Corporate Partner Benefits") including, among other things:



Filed          19-CI-00611   02/20/2019     3   Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019         /s/Vincent Riggs, Fayette Circuit Clerk

Package:000005 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000005 of 000024

Filed                    19-CI-00611      02/20/2019          Vincent Riggs, Fayette Circuit Clerk
A true copy attest       19-CI-00611      02/20/2019          /s/Vincent Riggs, Fayette Circuit Clerk



14.    Under, and for the Term of, the Agreement, Pivotal also received extensive digital media and hospitality benefits (the "Digital and Hospitality Benefits") including, among other things:

Package:000006 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000006 of 000024

4

Filed                    19-CI-00611      02/20/2019          Vincent Riggs, Fayette Circuit Clerk
A true copy attest       19-CI-00611      02/20/2019          /s/Vincent Riggs, Fayette Circuit Clerk

Filed                     19-CI-00611    02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest         19-CI-00611    02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

These benefits were designed to provide Pivotal exposure to connect with owners, breeders, farms, racing stables, industry associations and other corporate sponsors for purposes of promoting Pivotal's online and retail processing business.

15.    In consideration for receiving the Corporate Partner Benefits and the Digital and Hospitality Benefits, Pivotal was required to pay designated sponsorship royalties and digital and hospitality fees to BCL and BCP, including:



See Agreement at Section 3(a) and 3(b).

16.    Under, and for the Term of, the Agreement, Pivotal was also granted the right to enter into a separate merchant processing arrangement with BCP (the "Merchant Agreement"), allowing for Pivotal to process certain payments associated with the World Championships, including fees for nominations to Breeders' Cup programs and racing entry fees, charitable contributions, and entry fees for a handicapping contest called Breeders' Cup Betting Challenge (the "Processing Benefits").   A true and correct copy of the Merchant Agreement is attached hereto and made a part hereof as Exhibit 2.

17.    Pursuant to the Merchant Agreement, for a period equal to the Term, Pivotal was entitled to receive

Filed                     19-CI-00611    02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest         19-CI-00611    02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

Package:000007 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000007 of 000024

Filed            19-CI-00611    02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk



18.     As consideration for the right to process payments under the Merchant
Agreement, during the 2016, 2017, 2018 and 2019 years, Pivotal agreed to pay Breeders' Cup

19.     In addition to the Agreement and the Merchant Agreement, Pivotal also entered
into separate merchant agreements with the respective host race tracks for each of the World
Championships conducted in 2014, 2015, 2016 and 2017, pursuant to which the host tracks in
each of those years contracted directly with Pivotal for Pivotal to process ticket sales for patrons.
Neither BCL nor BCP were party to those agreements.

### The 2018 World Championships and Pivotal's Purported Termination

20.     Commencing on October 2, 2014 and continuing through Pivotal's purported
termination of the Agreement on October 29, 2018 (described below), Pivotal received all rights
and benefits to which it was entitled under the Agreement and the Merchant Agreement.

21.     In April 2017, Breeders' Cup officially announced that the 2018 World
Championships would be held in Louisville, Kentucky and that Churchill Downs would serve as
the host race track for the 2018 event, to be held November 2-3, 2018.

22.     In April 2017, Breeders' Cup officials met with representatives of Pivotal to
commence preparations for Pivotal's participation in the 2018 World Championships at
Churchill Downs.

Package:000008 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622336)

Package : 000008 of 000024

6

Filed            19-CI-00611    02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

Filed                          19-CI-00611      02/20/2019      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      19-CI-00611      02/20/2019      /s/Vincent Riggs, Fayette Circuit Clerk

23.     During that meeting, among other things, Breeders' Cup representatives informed Pivotal that Churchill Downs had an exclusive contract with Ticketmaster for the processing of patron event tickets and therefore Pivotal should not expect to enter into a merchant agreement with Churchill Downs for that aspect of the event.   Breeders' Cup made clear to Pivotal, however, that Pivotal would continue to receive all of its benefits under the Agreement and the Merchant Agreement, including the full range of Corporate Partner Benefits, Digital and Hospitality Benefits, and would continue to process all fees for nominations and racing entry fees, charitable contributions, and entry fees for the Breeders' Cup Betting Challenge as it had in the past.  Pivotal did not voice any objection or issue with Ticketmaster processing patron event tickets during that meeting.

24.     From April, 2017 through October, 2018, Breeders' Cup and Pivotal continued to communicate and work together in their customary fashion to fulfill their mutual obligations under the Agreement and Merchant Agreement, including engaging in numerous planning meetings, phone calls, and email communications.

25.     As of September, 2018, Breeders' Cup and Pivotal had solidified arrangements for Pivotal's involvement in the 2018 World Championships, including using Pivotal as the processor for all fees for nominations and racing entry fees, charitable contributions, and entry fees for the Breeders' Cup Betting Challenge, securing Pivotal's tickets to events, securing Pivotal's hotel reservations, placing Pivotal's branding in all required signage, marketing materials, social media materials, and newsletters, and securing Pivotal's sponsorship of selected events, including a cocktail reception prior to the Thursday November 1, 2018 VIP event.

26.     On September 4, 2018, Breeders' Cup sent Pivotal invoices for the BCL Payment and the BCP Payment, each of which were due on or before October 1, 2018.

7

Package:000009 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622336)

Package : 000009 of 000024

Filed                         19-CI-00611    02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

27.   Pivotal did not pay the BCL Payment or the BCP Payment on or before October 1, 2018, and has still not made such payments.

28.   At no point between April, 2017 through October 28, 2018 did Pivotal provide notice to Breeders' Cup – written or otherwise – that it believed the inability to process patron event tickets constituted grounds for termination of the Agreement or that it intended to terminate the Agreement for that reason.

29.   On October 19, 2018, Pivotal, for the first time, informed Breeders' Cup that its representatives would not be attending the 2018 World Championships and that it would not participate in any of the marketing, branding, or sponsorship opportunities afforded under the Agreement:

From: Kirk Smith <ksmith@globalonepay.com>
Date: Friday, October 19, 2018 at 10:20 AM
To: Meghan Wernimont <Meghan@breederscup.com>, Pam Mukiama <pmukiama@ppi.mc>
Subject: RE: BCWC 2018

Hi Meghan,

We will not be attending this year's BC Championship event this year. The decision was made by our executive team not to attend or do the activation under the Pivotal banner due to our re-branding initiative that is scheduled to launch this month. We are focusing on all the components of the rebrand to ensure its done effectively and smoothly across our entire enterprise.

Thanks for all the work you and your team has done and I do apologize for the short notice and I have no doubty that this year's Championship will be amazing as usual.

Regards,

Kirk Smith
AVP, Sales/Business Development

30.   In response, Breeders' Cup attempted to gain clarification for the abrupt change:

Package:000010 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000010 of 000024

8

Filed                         19-CI-00611    02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

Filed                    19-CI-00611    02/20/2019      Vincent Riggs, Fayette Circuit Clerk
A true copy attest       19-CI-00611    02/20/2019      /s/Vincent Riggs, Fayette Circuit Clerk

**From:** Meghan Wernimont [mailto:Meghan@breederscup.com]
**Sent:** Friday, October 19, 2018 10:33 AM
**To:** Kirk Smith; Pam Mukiama
**Subject:** Re: BCWC 2018

Hi Kirk,

I am confused. So no one from Pivotal Payments will be at Breeders' Cup this year? I had no idea this was the case because I have already sent your ticket package? Does this mean nothing will be happening with Christine Moore and you will not be hosting the guest check in for Taste of the World with complimentary champagne?

Thanks,

Meghan Wernimont
Coordinator, Corporate Partnerships

31.     Pivotal again reiterated that it would not be participating and that the decision

came from its executive team:

| | |
|---|---|
| Subject: | RE: BCWC 2018 |
| Date: | Friday, October 19, 2018 at 10:38:06 AM Eastern Daylight Time |
| From: | Kirk Smith |
| To: | Meghan Wernimont, Pam Mukiama |
| Attachments: | image008.png, image009.png, image010.png, image011.png, image012.png, image013.png, image014.png, image015.png, image016.png, image017.png, image018.png, image019.png, image020.png, image021.png |

Hi Meghan,

That's correct no one from Pivotal will be at the event; once I receive the tickets I will return them immediately and the nothing will be happening with Christine Moore or the activation as well.

Again I do apologize for the shorty notice this was a decision that came from our executives team.

Kirk Smith
AVP, Sales/Business Development

32.     At no point in its communications on October 19, 2018 did Pivotal indicate that

its reasoning for not attending the 2018 event was based on an inability to process patron event

tickets, nor did Pivotal provide notice to Breeders' Cup – written or otherwise – that it believed

the inability to process patron event tickets constituted grounds for termination of the Agreement

or that it intended to terminate the Agreement for that reason.

Filed                    19-CI-00611    02/20/2019      Vincent Riggs, Fayette Circuit Clerk
A true copy attest       19-CI-00611    02/20/2019      /s/Vincent Riggs, Fayette Circuit Clerk

Package:000001 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622336)

Package : 000011 of 000024

Filed                          19-CI-00611     02/20/2019          Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611     02/20/2019          /s/Vincent Riggs, Fayette Circuit Clerk

33.    Later on October 19, 2018 Breeders' Cup representative Meghan Wernimont called Pivotal representative, Kirk Smith, to try and gain further insight into the reasoning for the abrupt change.  In a very brief conversation, Mr. Smith expressed how sorry he was for the change and again explained that the decision came from the desire of his executive team to focus on Pivotal's re-brand initiative.

34.    At no point on that October 19, 2018 phone call did Mr. Smith indicate that Pivotal's reasoning for not attending the 2018 event was based on an inability to process patron event tickets, nor did Mr. Smith provide notice to Breeders' Cup that Pivotal believed the inability to process patron event tickets constituted grounds for termination of the Agreement or that Pivotal intended to terminate the Agreement for that reason.

35.    On October 29, 2018 (during the week of the event), Pivotal emailed Breeders' Cup and, for the first time, informed Breeders' Cup of its position that Pivotal's inability to process patron event tickets constituted a breach of the Agreement and that it was terminating the Agreement on that basis:

10

Package:000012 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622336)

Package : 000012 of 000024

Filed          19-CI-00611   02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

| Subject: | Breeders Cup Limited - Termination of Agreement |
|---|---|
| Date: | Monday, October 29, 2018 at 1:53:38 PM Eastern Daylight Time |
| From: | Kirk Smith |
| To: | Meghan Wernimont |
| CC: | Allan Lacoste |
| Attachments: | image001.png, image002.png, image003.png, image004.png, image005.png, image006.png, image007.png |

Dear Mrs. Wernimont,

This is further to our telephone conversation of October 20, 2018 regarding our October 2014 Partner and Media Agreement with Breeders' Cup Limited and Breeders' Cup Properties LLC.

As discussed, the fact that Pivotal will not be the payment processor for this year's Breeders' Cup Championship at Churchill Downs is a material breach of the agreement. Also, this breach may not be cured as per prior talks, which we have had with representatives of Breeders' Cup, to the effect that processing for this event has been granted to another processor and this may not be changed. It is obvious that payment processing for the annual championship is the essential consideration for which Pivotal has entered into this agreement and agreed to pay the royalty and fee set forth in the agreement.

We regret having had to come to this conclusion, but this un-curable material breach leaves us no choice other than to hereby terminate this agreement, without the need for further notice, as per section ▇▇▇.

Regards,

Kirk Smith
AVP, Sales/Business Development

36.     Contrary to Pivotal's allegations, Breeders' Cup did not commit a material breach of any of its obligations, covenants, representations or warranties under the Agreement, and therefore there was no justifiable basis for Pivotal's attempted termination.

37.     Notwithstanding its attempted termination, Pivotal received and retained material benefits associated with the 2018 World Championships, including, without limitation, receiving processing fees for serving as the processor for all 2018 fees for nominations and racing entry fees, charitable contributions, and entry fees for the 2018 Breeders' Cup Betting Challenge, and having its branding placed in all required signage, marketing materials, social media materials, and newsletters.

Filed          19-CI-00611   02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

Package:000013 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000013 of 000024

Filed                 19-CI-00611   02/20/2019   Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611   02/20/2019   /s/Vincent Riggs, Fayette Circuit Clerk

38.     Despite demand from Breeders' Cup, Pivotal has failed and refused to make the BCL Payment and BCP Payment that were due on October 1, 2018, and has not otherwise expressed a desire or intent to fulfill its remaining obligations under the Agreement, which continue through January 31, 2020.

## COUNT I
### (Breach of Contract)

39.     Breeders' Cup incorporates by reference as if set forth fully herein the allegations in numerical paragraphs 1 through 38 above.

40.     Pivotal has engaged in acts and omissions which are contrary to its duties and obligations under the Agreement and the Merchant Agreement, including, without limitation, failing to make the BCL Payment and BCP Payment that were due on October 1, 2018 and attempting to terminate the Agreement and Merchant Agreement without justification.

41.     Despite verbal and written demands by Breeders' Cup, Pivotal has failed and refused to make the BCL Payment and BCP Payment that were due on October 1, 2018 and has purported to terminate the Agreement and Merchant Agreement as of October 29, 2018, thereby indicating it will not fulfil its remaining obligations under the Agreement and Merchant Agreement which continue through January 31, 2020, despite the fact that Breeders' Cup remains willing and able to perform its obligations under such agreements.

42.     Pivotal's acts and omissions as set forth hereinabove constitute a breach of contract with respect to the Agreement and Merchant Agreement.

43.     Breeders' Cup has been damaged as a direct and proximate result of Pivotal's breaches, in an amount in excess of this Court's jurisdictional minimum.

Package:000014 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000014 of 000024

12

Filed                 19-CI-00611   02/20/2019   Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611   02/20/2019   /s/Vincent Riggs, Fayette Circuit Clerk

Filed          19-CI-00611   02/20/2019       Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019       /s/Vincent Riggs, Fayette Circuit Clerk

## COUNT II
### (Unjust Enrichment)

44.     Breeders' Cup incorporates by reference as if set forth fully herein the allegations in numerical paragraphs 1 through 43 above.

45.     Pivotal received and retained material benefits associated with the 2018 World Championships, including, without limitation, receiving processing fees for serving as the processor for all 2018 fees for nominations and racing entry fees, charitable contributions, and entry fees for the 2018 Breeders' Cup Betting Challenge, and having its branding placed in all required signage, marketing materials, social media materials, and newsletters.

46.     Despite receiving these benefits, Pivotal has failed to pay any portion of the 2018 BCL Payment or the 2018 BCP Payment, and has therefore been unjustly enriched, to Breeders' Cup's detriment, in an amount in excess of this Court's jurisdictional minimum.

## COUNT III
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

47.     Breeders' Cup incorporates by reference as if set forth fully herein the allegations in numerical paragraphs 1 through 46 above.

48.     As a party to the Agreement and Merchant Agreement, Pivotal had an implied duty under Kentucky law to act in good faith and deal fairly in the performance of its duties and obligations to Breeders' Cup thereunder.

49.     Pivotal has engaged in acts and omissions which are contrary to its duties of good faith and fair dealing, including, without limitation, by refusing to make required payments and purporting to terminate the Agreement and Merchant Agreement without due cause.

50.     Pivotal's acts and omissions as set forth hereinabove constitute a breach of its implied covenant of good faith and fair dealing.

Package:000015 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000015 of 000024

13

Filed          19-CI-00611   02/20/2019       Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019       /s/Vincent Riggs, Fayette Circuit Clerk

Filed                    19-CI-00611      02/20/2019         Vincent Riggs, Fayette Circuit Clerk
A true copy attest       19-CI-00611      02/20/2019         /s/Vincent Riggs, Fayette Circuit Clerk

51.     Breeders' Cup has been damaged as a direct and proximate result of Pivotal's breaches, in an amount in excess of this Court's jurisdictional minimum.

WHEREFORE, Plaintiffs, Breeders' Cup Limited and Breeders' Cup Properties, LLC, respectfully demands as follows:

1,      Judgment against Defendant, Nuvei Technologies Inc. f/k/a Pivotal Payments Inc., for any and all amounts owed to Breeders' Cup under the Agreement and Merchant Agreement, including all incidental or consequential damages, with prejudgment and post-judgment interest thereon;

2.      An award of its reasonable costs and attorneys' fees;

3.      A trial by jury on all issues so triable; and

4.      Any and all other relief to which Breeders' Cup may be entitled.

This the 20th day of February, 2019.

Respectfully submitted,

/s/W. Chapman Hopkins
W. Chapman Hopkins
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1801
Telephone:  (859) 231-3000
Chapman.Hopkins@skofirm.com

*Counsel for Plaintiffs, Breeders' Cup
Limited and Breeders' Cup Properties, LLC*

002946.162657/7865704.6

Filed                    19-CI-00611      02/20/2019    14   Vincent Riggs, Fayette Circuit Clerk
A true copy attest       19-CI-00611      02/20/2019         /s/Vincent Riggs, Fayette Circuit Clerk

Package:000016 of 000024

Presiding Judge: HON. LUCY A. VANMETER (623386)

Package : 000016 of 000024

Filed                19-CI-00611    02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611    02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

# EXHIBIT 1
## (CONFIDENTIAL - TO BE FILED UNDER SEAL)

Filed            19-CI-00611   02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

# EXHIBIT 2

Package:000018 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000018 of 000024

Filed            19-CI-00611   02/20/2019        Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019        /s/Vincent Riggs, Fayette Circuit Clerk

Filed          19-CI-00611    02/20/2019          Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019          /s/Vincent Riggs, Fayette Circuit Clerk

**PIVOTAL** PAYMENTS    MERCHANT APPLICATION AND AGREEMENT    **Merrick Bank**

135 Crossways Park Drive North, Suite A Woodbury, NY 11797 Ph - 800-267-2256

Referral Partner: _____    Referral Division/Branch: _____

Referral Employee: _____    Agent Office / Sales Rep Name: _____

| MERCHANT BUSINESS INFORMATION | DBA INFORMATION ■ Check if DBA same as Legal Information. If not indicate DBA name and complete section below. |
|---|---|
| Name of Ownership Entity (Legal Name): **BREEDERS' CUP LIMITED** | DBA Name: **BREEDERS' CUP LIMITED** |
| Corporate / Billing Address: **2525   HARRODSBURG ROAD** | Address: **2525   HARRODSBURG ROAD** |
| City: **LEXINGTON**  State: **KY**  Zip: **40504**  + Four (Zip +4): | City: **LEXINGTON**  State: **KY**  + Four (Zip +4): **40504** |
| Telephone # (Landline): **(859) 223-5444**  Federal Tax ID: ■■■■ | Telephone #: **(859) 223-5444**  Fax #: **(859) 223-3945** |
| IRS Tax Filing Name: (This is the business name you have used / will use to file taxes with IRS for your business) **BREEDERS' CUP LIMITED** | Business Email: **Michael@Breederscup.com** |
| URL: **www.breederscup.com** | Product or Service Sold (explain in full) **Nomination Elegibility Payments** |
| Have you been placed on the Match List?  ☐ Yes  ■ No | Previous Processor?: **ECS**    Termination Date: ____ |
| How long in present business?  Years **31**  Months ____ | Check-off reason for leaving:  ☐ Rates  ☐ Service  ☐ Other: **Sponsorship** |
| Merchant Customer Service # (If MOTO/Ecomm): **( 877 ) 936-7183** | Choose One Mailing Address: ■ Corporate  ☐ Location  Attention: **Michael Newman** |
| | What descriptor would you like to appear on customer's credit card statement? (max 24 characters) **BREEDERS' CUP LIMITED** |

OWNERS OR OFFICERS (Ownership must be equal to or greater than 50%) - No P.O. Box #

| Title: **Chief Operating Officer** | Email Address: **bob@breederscup.com** | Percent Ownership: ___ % |
|---|---|---|
| First Name: **Bob** | Last Name: **Elliston** | Date of Birth (mm/dd/yyyy): ■■■■ |
| Home Address: **8735 Rosebrook Drive** | City: **Lexington**  State: **KY** | Zip: **41042**  + Four (Zip +4): |
| Home Tel. # ■■■■ | SSN: ■■■■  Driver's Lic. # ■■■■ | State: **KY** |

| Title: **Treasurer** | Email Address: **MNewman@breederscup.com** | Percent Ownership: ___ % |
|---|---|---|
| First Name: **Michael** | Last Name: **Newman** | Date of Birth (mm/dd/yyyy): ■■■■ |
| Home Address: **3029 Dale Hollow Drive** | City: **Lexington**  State: **KY** | Zip: **40515**  + Four (Zip +4): |
| Home Tel. # ■■■■ | SSN: ■■■■  Driver's Lic. # ■■■■ | State: **KY** |

| BUSINESS PROFILE | SALES PROFILE |
|---|---|
| Type of Ownership: ☐ Sole Proprietorship  ☐ Partnership  ☐ Corporation  ☐ Limited Liability  ☐ Government  ■ Non-Profit | Merchant Type: ☐ Retail  ☐ MO/TO  ☐ Restaurant  ☐ Internet  ☐ Lodging  ☐ Home Based  ☐ Business to Business  ■ Other **Horse Racing** |

VISA / DISCOVER® / MASTERCARD SALES PROFILE (be as accurate as possible or delays will occur in processing the application)

| Card Swipe: **0** % | Seasonal: ☐ Yes. Please indicate months of operation: | VISA / DISCOVER / MASTERCARD |
|---|---|---|
| Keyed (Card Present): **0** % | ☐ January ☐ June ☐ November | **Monthly Volume:** $ **250,000.00** |
| MO/TO (Card Not Present): **15** % | ☐ February ☐ July ☐ December | |
| Internet: **85** % | ☐ March ☐ August | **Average Ticket:** $ **1,500.00** |
| Total = 100% (includes calculation of all 4 categories) | ☐ April ☐ September ☐ May ☐ October | |

BANK DISCLOSURE

DEFINITIONS: "Merchant Application" means this Merchant Application between Merrick Bank, Pivotal Payments Inc. and Merchant.
"Merchant Agreement" means this Merchant Application once approved and accepted by Merrick Bank together with the Terms and Conditions of the Merchant Agreement found at www.pivotalpayments.com/MA.

Member Bank Information: Merrick Bank, 135 Crossways Park Drive North, Suite A, Woodbury, NY 11797 • Phone (800) 267-2256 Fax 516 576-8741
Important Bank Responsibilities:
1. Merrick Bank is the only entity approved to extend acceptance of Visa products directly to a Merchant.
2. Merrick Bank is responsible for educating Merchants on pertinent Visa operating regulations with which Merchants must comply.
Important Merchant Responsibilities:
1. Complying with cardholder data security and storage requirements.
2. Maintaining fraud and chargebacks below established thresholds.
3. Merrick Bank, not the ISO, must hold, administer and control all reserve funds derived from settlement.
4. Merrick Bank, not the ISO, must hold, administer and control settlement funds for the Merchant.
5. Merrick Bank must be a principal (signor) to the Merchant Agreement.
3. Reviewing and understanding the Merchant Agreement, located at above Internet address.
4. Complying with Visa's operating regulations.

The responsibilities listed above do not supersede terms of the actual Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Visa Member - Merrick Bank - is the ultimate authority should the Merchant have any problems.

Merchant Signature X: _~signature~_    Title: _Treasurer_    Date: _2/10/14_

Agent8002-03/13    Pivotal Payments is a registered ISO/MSP of Merrick Bank (Acquirer)    1/4

Filed          19-CI-00611    02/20/2019          Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019          /s/Vincent Riggs, Fayette Circuit Clerk

Package :000019 of 000024    Presiding Judge: HON. LUCY A. VANMETER (622286)    Package :000019 of 000024

## SCHEDULE A

Billing Options: ■ Daily   ☐ Monthly

| Card Type Accepted | Discount Rate Qualified | Surcharge +Mid-Qualified | +Non-Qualified | Transaction Fee Qualified | Mid-Qualified | Non-Qualified | Authorization Fee |
|---|---|---|---|---|---|---|---|
| Visa, M/C, Discover Check Card | x % | x % | x % | $ x | $ x | $ x | $ x |
| Visa, M/C, Discover Credit Card | x % | x % | x % | $ x | $ x | $ x | $ x |
| Cost Plus | 0.25 % | | | | | | |
| PIN-Based (Online) Debit | $ | ☐ Debit Network Pass-through* | | | | | |
| AMEX | % | AMEX Per Item | $ | EBT Per Item | $ | | |
| ☐ New Amex Acct or Existing Amex Acct #: | | | | Existing EBT # | | | |

### OTHER SERVICE FEES

| | | | | | |
|---|---|---|---|---|---|
| Set-Up Fee | $ x | Per Application | Batch Fee | $ | Per Batch |
| Statement Fee – Monthly | $ x | Per Merchant ID | Address Verification | $ 0.05 | Per Instance |
| Online Reporting Fee – Monthly | $ x | Per Merchant ID | Wireless Fee - Monthly | $ x | Monthly |
| Annual Fee | $ x | Annual | Wireless Activation Fee | $ x | Per Instance |
| Monthly Support Fee | $ x | Monthly | Gateway Setup Fee | $ x | Per Set-Up |
| Chargeback Fee | $ 25 | Per Chargeback | Gateway Fee - Monthly | $ x | Monthly |
| Retrieval Fee | $ 15 | Per Retrieval | Micros Transaction Fee | $ x | Per Instance |

* Debit pass-through is defined as the current Debit Network pass-through rates (including access and per item fees).

### EQUIPMENT LEASE

| Quantity | POS Description | Lease Term | Total Monthly Lease Charge |
|---|---|---|---|
| | | Months | $ |
| | | Months | $ |
| | | Months | $ |

☐ Terminal Insurance Program — Late fees or other charges may apply. This is a non-cancelable lease for full term indicated in Part Four of the online Merchant Agreement.

FDGL Relationship Code:

### MERCHANT APPLICATION AND AGREEMENT ACCEPTANCE

By executing this Merchant Application and Agreement on behalf of the merchant described above ("Merchant"), the undersigned individual(s) represent(s), warrant(s), and acknowledge(s) that: (i) All information contained in this Merchant Application ("Application") is true, correct and complete as of the date of this Application; (ii) If the Merchant is a corporation, limited liability company, or partnership, the individual(s) executing this Application have the requisite legal power and authority to complete and submit this Application on behalf of the Merchant and to make and provide the acknowledgements, authorizations and agreements set forth herein on behalf of the Merchant and individually; (iii) The information contained in this Application is provided for the purpose of obtaining, or maintaining, a merchant account for the Merchant with the Member Bank and Pivotal Payments ("BANK") and BANK will rely on the information provided herein in its approval process and in setting the applicable Discount Rate, Approved Average Ticket, and Approved Monthly Payment Card Volume; (iv) BANK is authorized to investigate, either through its own agents or through credit bureaus/agencies, the credit of the Merchant and each person listed on this Application; (v) BANK will determine all rates, fees and charges and notify Merchant of the approved fees and by Merchant's submission and acceptance of Merchant's first settled transaction; Merchant agrees to pay such approved fees, including those fees listed at section of 5.07 the attached Merchant Agreement; (vi) The Merchant Agreement will not take effect until Merchant has been approved by BANK and a merchant number has been issued to Merchant; and (vii) The undersigned has read and understood the Merchant Agreement, which is incorporated herein by reference and agrees on behalf of the Merchant to be bound by the terms of such Merchant Agreement. The merchant on whose behalf this Application is being submitted acknowledges that if this Application is being submitted to Merrick Bank as the Member Bank, Pivotal Payments is also a party to this Merchant Agreement. In such case, Merchant acknowledges that Pivotal Payments will rely on the representations and warranties set forth in this Application for Merchant Agreement and unless otherwise specified or prohibited by Association or applicable law, Pivotal Payments will have all the rights of Merrick Bank under this Merchant Application and Agreement.

You have the option of accepting MasterCard credit cards, Visa credit cards, credit cards issued by Discover, MasterCard signature debit cards (MasterMoney Cards) or Visa signature debit cards (Check Cards), or debit cards issued by Discover. You may elect to accept any or all of these card types for payment. If you do not specifically indicate otherwise, your application will be processed to accept ALL MasterCard, Discover, and Visa card types. Elected Visa, Discover, or MC card types NOT to accept:

**Merchant acknowledges having read and agreed to the terms and conditions of the online Merchant Agreement found at www.pivotalpayments.com/MA. If Merchant was unable to access such online agreement, Merchant acknowledges having been provided a copy by Pivotal Payments, and having read and agreed to same.**

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT: To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: when you open an account, we may ask you for information that will allow us to identify you, including a copy of your driver's license or other identifying documents.

**MERCHANT:**

Principal #1 Signature X: _____

Print Name: Robert N. Elliston   Date: 6/30/2014

Principal #2 Signature X _____

Print Name: Michael Newman   Date: 7/10/24

**BANK:**

By: _____   Date: _____

Name and Title: _____

**PIVOTAL PAYMENTS INC.:**

By: _____   Date: _____

Name and Title: _____

Agent8002-03/13    Pivotal Payments is a registered ISO/MSP of Merrick Bank (Acquirer)    - 2/4

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package:000020 of 000024

Package : 000020 of 000024

Filed        19-CI-00611    02/20/2019          Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019    /s/Vincent Riggs, Fayette Circuit Clerk

## PCI* AND PAYMENTS APPLICATION COMPLIANCE

1. Do you store credit card numbers?  ☐ Yes   ■ No

2. Do you use a third party payment application that stores, transmits, or processes cardholder data?  ■ Yes   ☐ No
   (Examples: Aloha version 6.1, iperc version 2.4, etc.)

3. If yes, please provide name & version #:  GlobalOne

*PCI fee: $10 per LP., per month (Ecomm and MOTO if applicable).; $6 per MID for Retail and MOTO if applicable per month. Additional PCI terms set out in the online Merchant Agreement.

NOTE: ONLY APPLICATIONS THAT COMPLY WITH ASSOCIATION SECURITY STANDARDS WILL BE PERMITTED.

A list of valid applications is available at:
· www.pcisecuritystandards.org

## TRADE / REFERENCES

| Trade Reference 1 (Required - Depository Bank Acceptable) | Trade Reference 2 |
|---|---|
| Company Name: Conover Tuttle Pace | Company Name: |
| Address: 77 North Washington Street, Boston MA  02114 | Address: |
| Contact: Lee Allen    Title: | Contact:    Title: |
| Telephone #: 617-412-4000    Ext.: | Telephone #:    Ext.: |

## ELECTRONIC DEBIT/CREDIT AUTHORIZATION

Please provide a pre-printed void business check or bank letter confirming your business account Transit # (ABA Routing) and Account# (DDA).
By providing this information, you are authorizing the Bank to initiate ACH debit and credit transactions to said account.

## AMERICAN EXPRESS

By signing below, I authorize American Express Travel Related Services Company Inc. ("Amex") to verify the information on this application and to request information from credit/consumer reporting agencies. Upon request, Amex will advise me if any credit report inquiry has been made and provide the identity and address of the agency having furnished said report. I understand that upon Amex's approval of the above merchant applicant, the Terms and Conditions for American Express Card Acceptance ("T&Cs") will be sent to such applicant's address, along with a Welcome Letter. By accepting the American Express Card for the purchase of goods/services, you agree to be bound by the T&Cs.

Signature X: _____    Date: _____

## CONTINUING PERSONAL GUARANTY PROVISION – PERSONAL GUARANTOR

By signing below, each individual or entity ("Guarantor") jointly and severally (if there is more than one Guarantor) unconditionally guarantees to Pivotal Payments and BANK the prompt payment and full and complete performance of all obligations of the Merchant identified above under the Merchant Agreement, as amended from time to time, including, without limitation, all promises and covenants of the Merchant, and all amounts payable by the Merchant under the Merchant Agreement, including, without limitation, charges, interest, costs and other expenses, such as attorney's fees and court costs. This means, among other things, that Pivotal Payments or BANK can demand performance or payment from any Guarantor if the Merchant fails to perform any obligation or pay what the Merchant owes under the Agreement. Each Guarantor agrees that his or her liability under this guaranty will not be limited or canceled because: (1) the Merchant Agreement cannot be enforced against the Merchant for any reason, including, without limitation, bankruptcy proceedings; (2) either Pivotal Payments or BANK agrees to changes or modifications to the Merchant Agreement, with or without notice to Guarantor; (3) Pivotal Payments or BANK releases any other Guarantor or the Merchant from any obligation under the Merchant Agreement; (4) any law, regulation, or order of any public authority affects the rights of either Pivotal Payments, Merchant, or BANK under the Merchant Agreement; and/or (5) anything else happens that may affect the rights of either Pivotal Payments or BANK against the Merchant or any other Guarantor. Each Guarantor further agrees that: (a) Pivotal Payments and BANK each may delay enforcing any of its rights under this guaranty without losing such rights and hereby waives any applicable Statute of Limitations; (b) Pivotal Payments and BANK each can demand payment from such Guarantor without first seeking payment from the Merchant or any other Guarantor or from any security held by the BANK; and (c) such Guarantor will pay all court costs, attorney's fees, and collection costs incurred by either Pivotal Payments or the BANK in connection with the enforcement of the Merchant Agreement or this Guaranty, whether or not there is a lawsuit, and such additional fees and costs as may be directed by a court. If the Merchant is a corporation or limited liability company, this Guaranty must be executed by a principal or affiliate of Merchant. Guarantor agrees and acknowledges having read the Merchant Agreement found at www.pivotalpayments.com/MA.

Principal #1 Signature X: _____    Principal #2 Signature X: _____

Print Name: _____    Date: 6/30/2014    Print Name: _____    Date: _____

## ADDITIONAL CREDIT/SITE SURVEY INFORMATION – ALL MERCHANTS

1. Zone:
   ■ Business District   ☐ Industrial   ☐ Residential

2. Location:
   ☐ Mall  ■ Office  ☐ Home  ☐ Shopping Area  ☐ Mixed  ☐ Apartment  ☐ Isolated

3. Approximate Square Footage:
   ☐ 0-250  ☐ 251-500  ☐ 501-2,000  ■ 2,001 plus

4. Are all your products / services delivered immediately?
   ■ Yes  ☐ No

5. Do you have a refund policy for Visa / Discover / MasterCard Sales?
   ■ Yes  ☐ No
   If yes, check one:  ☐ Exchange   ☐ Store Credit   ■ Visa / Discover / MasterCard Credit
   If Visa / Discover / MasterCard Credit, within how many days do you submit credit transactions?
   ■ 0-3  ☐ 4-7  ☐ 8-14  ☐ over 14

Agent Signature: _____

Agent8002-03/13    Pivotal Payments is a registered ISO/MSP of Merrick Bank (Acquirer)    3/4

Filed        19-CI-00611    02/20/2019          Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019    /s/Vincent Riggs, Fayette Circuit Clerk

Package:000021 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000021 of 000024

Filed          19-CI-00611   02/20/2019   Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019   /s/Vincent Riggs, Fayette Circuit Clerk

**MO/TO QUESTIONNAIRE: PLEASE COMPLETE IF 100% OF YOUR PRODUCTS/SERVICES ARE NOT DELIVERED PRIOR TO OR IMMEDIATELY UPON CHARGING THE CREDIT CARD:**

1. What percentage of sales are to:

Business Clients __100__ %          Individual Consumer _____ %

2. Method of Marketing:

☐ Phone book          ☐ Newspaper/Magazine          ☐ Television/Radio          ☐ Internet

☐ Social Media          ■ Direct Mail, Brochure and/or Catalog          ☐ Outbound Telemarketing Sales          ☐ Trade Shows

☐ Others: _____

3. Who enters credit card information into the processing system?

☐ Merchant   ☐ Fulfillment Center   ☐ Consumer   ■ Other __Combination__

4. If credit card payment information is taken over the Internet is payment channel encrypted by SSL or better? ■ Yes   ☐ No

5. If merchant is an e-commerce merchant, is an SSL Merchant Certificate utilized? ■ Yes   ☐ No

If yes, please provide the following:

Merchant Certificate #: __GlobalOne__   Certificate Issuer: __GlobalOne__   Exp. Date: __N/A__   Is Certificate? ☐ Individual ■ Shared

6. Do you own the product/inventory? ■ Yes   ☐ No;

Is the product stored at your business location? ■ Yes   ☐ No          If No, where is it stored? _____

7. How long after payment is product delivered?

☐ Same Day ___% of Sales, ☐ 1-3 Days ___% of Sales, ☐ 4-7 Days ___% of Sales, ☐ 8-14 Days ___% of Sales, ☐ 15-30 Days ___% of Sales, ☐ Over 30 Days ___% of Sales

Who ships the product? ☐ Merchant   ☐ Fulfillment Center   ■ Other: __No Products - Nomination Fees__

If Fulfillment Center:

Name: _____   Contact name: _____   Phone Number: _____

Address: _____

City: _____   ST: _____   Zip Code: _____ + Four: _____

8. Visa / MasterCard / Discover card sales are charged to the card on: ■ Date of Order   ☐ Date of delivery

☐ Other (Specify): _____

9. If your product is shipped, what delivery method do you use? (ex. US Post, FedEx, UPS or other): _____

_____

10. Does your business charge recurring billing to customers? ☐ Yes   ■ No

If yes, Explain: _____

11. Does any of your billing or marketing strategy involve negative response, or automatic billing? ☐ Yes   ■ No

If yes, Please Explain: _____

12. Do you require deposits? ☐ Yes   ■ No

If yes, % of total sales: ___%          OR Flat fee: $ _____

Is Final payment due before fulfillment? ☐ Yes   ☐ No          If yes, how many days before final delivery? _____

13. Do you offer a product /Service Warrantee or Guarantees? ☐ Yes   ■ No          If yes, is it: ☐ Replacement   ☐ Refund

If Refund, is it: ☐ 100% or   ☐ Other _____

Package:000022 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622336)

Package : 000022 of 000024

Agent8002-03/13   Pivotal Payments is a registered ISO/MSP of Merrick Bank (Acquirer)

Filed          19-CI-00611   02/20/2019   Vincent Riggs, Fayette Circuit Clerk
A true copy attest   19-CI-00611   02/20/2019   /s/Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION NO. ____
CIVIL ACTION NO. 19-CI-_____
*Electronically Filed*

**BREEDERS' CUP LIMITED**                                              **PLAINTIFFS**

**and**

**BREEDERS' CUP PROPERTIES, LLC**

v.          **MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL**

**NUVEI TECHNOLOGIES INC. (F/K/A PIVOTAL PAYMENTS INC.)**
   Serve:  **Via Kentucky Secretary of State**
          Corporation Service Company (Registered Agent)
          251 Little Falls Dr.
          Wilmington, Delaware 19808                          **DEFENDANT**

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Come the Plaintiffs, Breeders' Cup Limited and Breeders' Cup Properties, LLC (collectively, the "Plaintiffs"), by counsel, and move the Court for leave to file an unredacted version of Plaintiffs' Complaint and the complete copy of Exhibit 1 to Plaintiffs' Complaint under seal.

In support of their Motion, Plaintiffs state that the Complaint is based principally upon a contract dispute between Plaintiffs and Defendants. Exhibit 1 to the Complaint is one of the agreements at issue; however it contains a confidentiality provision that prohibits the parties from disclosing the terms of the agreement to third parties. Accordingly, Plaintiffs have redacted relevant portions of the agreement from the body of the Complaint and have redacted Exhibit 1 in its entirety.

Package:000023 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000023 of 000024

Filed            19-CI-00611    02/20/2019       Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019       /s/Vincent Riggs, Fayette Circuit Clerk

In order to protect the rights and obligations of the parties to the agreement, it is necessary to make certain portions of the Complaint and the entirety of the agreement available to the Court and to the parties, while also protecting them from public disclosure.

WHEREFORE, Plaintiffs respectfully request the Court to grant this motion and direct the Plaintiffs to file the unredacted copy of the Complaint and Exhibit 1 thereto under seal with the Court, excluding said materials from the public record.

### NOTICE

PLEASE TAKE NOTICE that this motion shall come on for a hearing before the Fayette Circuit Court, on **Friday,** _____ **2019**, at the hour of _____, or as soon thereafter as counsel may be heard.

Respectfully submitted,

/s/W. Chapman Hopkins
W. Chapman Hopkins
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1801
Telephone: (859) 231-3000
Chapman.Hopkins@skofirm.com

*Counsel for Plaintiffs, Breeders' Cup
Limited and Breeders' Cup Properties, LLC*

002946.162657/7886352.1

Filed            19-CI-00611    02/20/2019       Vincent Riggs, Fayette Circuit Clerk
A true copy attest    19-CI-00611    02/20/2019       /s/Vincent Riggs, Fayette Circuit Clerk

Package:000024 of 000024

Presiding Judge: HON. LUCY A. VANMETER (622386)

Package : 000024 of 000024



**ALISON LUNDERGAN GRIMES**
**SECRETARY OF STATE**

P.O. Box 718
Frankfort, Kentucky 40602-0718



7018 2290 0000 8811 1288

NUVEI TECHNOLOGIES INC.
CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808