UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| BREEDERS' CUP LIMITED AND BREEDERS' CUP PROPERTIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NUVEI TECHNOLOGIES, INC. F/K/A PIVOTAL PAYMENTS, INC., <br><br> Defendant. | Civil Action No. 5:19-cv-00113-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court upon Defendant Pivotal Payments, Inc.'s[1] Motion to Transfer Venue. [R. 12.] This breach of contract action was initially filed in Fayette Circuit Court. [R. 1.] Defendant removed to this court pursuant to diversity jurisdiction. Now, Defendant seeks transfer to the Southern District of New York in accordance with a forum-selection clause purported to be included in the parties' contract. [R. 11; R. 12.] For the following reasons, Defendant's motion to transfer will be DENIED.

**I**

The Breeders' Cup race series was developed in 1982 by a group of thoroughbred breeders from Central Kentucky whose goal was "to create a year-end, culminating championship . . . where horses from across the world could meet to settle the age old question, who is the best." *See* https://www.breederscup.com/history-tradition. The Plaintiffs in this case,

---

[1] In the time since the parties first contracted with one another, Pivotal Payments, Inc. has rebranded and currently goes by the name Nuvei Technologies, Inc. However, for the sake of consistency with the underlying documents and Plaintiff's complaint, this Court will continue to refer to the Defendant as Pivotal Payments, or simply Pivotal.

Breeders' Cup Limited and Breeders' Cup Properties, LLC (collectively "Breeders' Cup"), are the entities tasked with making the event happen. Breeders' Cup Limited "is a not for profit organization existing for the purpose of enhancing Thoroughbred racing through the development of public interest in the sport[,]" and the host of the Breeders' Cup World Championships. [R. 26 at ¶ 6.] Breeders' Cup Properties "is an affiliate of BCL and offers media, hospitality, and other benefits to certain Thoroughbred racing industry sponsors and participants[.]" [R. 26 at ¶7.] Defendant Pivotal Payments, Inc. is a provider of credit card processing services. [R. 26 at ¶ 8.]

On October 2, 2014, the parties entered into a Corporate Partner and Media Agreement (the "Sponsorship Agreement"). [R. 26 at ¶ 10.] The Sponsorship Agreement afforded Pivotal certain rights, including the right to list itself as an "Official Credit Card Processor of the Breeders' Cup." *Id.* at ¶14. The Sponsorship Agreement does not contain a forum-selection clause, but does include a choice of law provision which provides that "[t]he validity, interpretation, and performance of this Agreement shall be controlled and construed under the internal laws of the Commonwealth of Kentucky[.]" [R. 26-1 at 12.]

Pursuant to the Sponsorship Agreement, the parties also agreed to enter into a separate merchant processing agreement between BCP and Pivotal (the "Merchant Agreement") allowing Pivotal to process certain payments associated with the Breeders' Cup events. [R. 26 at ¶16.] These included "nomination eligibility payments, registration fees for the Breeders' Cup Betting Challenge, and payments for Breeders' Cup Charities." [R. 18 at 4.] Pivotal also entered merchant agreements with other parties; for each Breeders' Cup Championship event from 2014 to 2017, Pivotal contracted with the host tracks for the right to process payments for patron

2

tickets to the events. [R. 26 at ¶ 19.] The Plaintiffs were not party to these merchant agreements. *Id.*

In April 2017, Breeders' Cup announced that the 2018 World Championship event would be held at Churchill Downs in Louisville, Kentucky. [R. 26 at ¶ 20.] Breeders' Cup informed Pivotal that Churchill Downs had an exclusive contract with Ticketmaster for processing patron event tickets, and therefore Pivotal should not expect to enter into a merchant agreement with Churchill Downs for this purpose. *Id.* at ¶ 23. Later, in October 2019, Pivotal informed Breeders' Cup that it viewed the inability to process patron event tickets as a material breach of the parties' Sponsorship Agreement, and that it was terminating the Sponsorship Agreement on that basis. [R. 26 at ¶ 35.] Breeders' Cup disputes that Pivotal's inability to process patron tickets amounted to a breach of the Sponsorship Agreement, and has filed suit alleging breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. [R. 26.]

Before the Court today is Pivotal's Motion to Transfer Venue based upon a forum-selection clause. [R. 11; R. 12.] The Merchant Agreement between Breeders' Cup and Pivotal incorporated by reference the Terms and Conditions located on Pivotal's website at www.pivotalpayments.com/MA. [R. 11 at 2.] The Term and Conditions include a choice of law provision and a forum-selection clause which Pivotal argues applies to this dispute. The Terms and Conditions state that any dispute between Plaintiffs and Pivotal shall be governed by the law of New York, and any legal action shall be instituted in either the state or federal courts of the state of New York. *Id.*

## II

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of §1404(a) is "to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations and quotation marks omitted). For this reason, transfer must be to a "more convenient forum," and not merely one that is equally convenient. *Van Dusen*, 376 U.S. at 645–46. In reviewing motions made pursuant to § 1404(a), courts consider a number of factors, including:

> (1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. Other factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties agreed to a forum selection clause.

*Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751, 755 (E.D. Ky. 2005). Thus, § 1404(a) "place[s] discretion in the district court to adjudicate motions for transfer according to an individualized case-by-case consideration of convenience and fairness." *Id.* at 754. Generally, the party moving for transfer bears the burden of establishing that venue should be transferred by showing that the relevant factors "weigh strongly in favor of transfer." *Winnett v. Caterpillar Inc.*, 2006 U.S. Dist. LEXIS 95973 (June 20, 2006 M.D. Tenn.).

However, the Supreme Court has held that when a motion to transfer is premised on a valid, enforceable forum-selection clause, the calculus changes. *See Atlantic Marine Const. Co.,*

*Inc. v. U.S. District Ct. for the W.D. Texas*, 571 U.S. 49 (2013). In *Atlantic Maine*, the Supreme Court found that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways," two of which are relevant here. *Id.* at 63. First, the plaintiffs' choice of forum merits no weight, and instead "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained for is unwarranted." *Id.* And second, "a court evaluating a defendants' § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 64. While a district court may still consider public interest factors, "those factors will rarely defeat a transfer motion [and] the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

**A**

Pivotal argues that transfer to the Southern District of New York is required "because the Merchant Agreement underlying Breeders' Cup's claims and [Pivotal's] counterclaims contains a forum-selection clause . . . that mandates that all disputes be litigated in New York[.]" [R. 12 at 4.] It states:

> This Agreement shall be governed exclusively by New York law, without regard to its choice of law provisions. Merchant agrees that any legal action or proceeding arising out of or relating to the relationship between [Pivotal] and Merchant shall be instituted solely in the state or federal courts of the state of New York and hereby submits to the jurisdiction of such courts in any such action or proceeding.

*Id.* The foregoing forum-selection clause is part of the Terms and Conditions posted on Pivotal's website, which is incorporated by reference into the Merchant Agreement. [*See* R. 26.] The Merchant Agreement, which Pivotal attached as an exhibit to its Motion to Transfer Venue, was entered into by the parties on July 7, 2014. [R. 11-1 at 4.]

5

Later, on October 2, 2014, the parties entered into the Sponsorship Agreement. [R. 26-1.] Breeders' Cup argues that "[t]he substantive rights and obligations of the parties were contained in the Sponsorship Agreement," whereas "[t]he Merchant Agreement[] addressed technical aspects of *how* Pivotal would process particular payments for Breeders' Cup; but not the substantive right to process such payments in the first place." [R. 18 at 4–5.] This seems correct, as the Sponsorship Agreement illustrates an intent to enter into the Merchant Agreement. That clause provides that the parties "shall simultaneously enter into a merchant processing arrangement (the "Merchant Agreement")" and describes certain fees to be paid under that agreement. Notably, the Sponsorship Agreement does not include a forum-selection clause. *Id.* at 4. However, it includes a choice of law provision that states the Sponsorship Agreement is expressly governed by Kentucky law. *Id.* at 12.

Despite the holding in *Atlantic Marine*, the Court is not convinced that transfer is required in this case, primarily because it is not clear that the forum-selection clause relied upon by Pivotal is actually applicable to Breeders' Cups claims. "Where a legitimate dispute exists as to whether the forum selection clause applies to the claims at issue [], the dispute minimizes its weight in the Court's transfer analysis." *Fulton Energy Grp., LLC v. Burau*, 2017 U.S. Dist. LEXIS 28989, *14–15 (W.D. Mich. March 1, 2017) (citing 15 Wright & Miller, Federal Practice & Procedure § 3854.1 (4th ed.) (forum-selection clause "may be ignored as a factor if it does not clearly apply to the action or if its binding nature is uncertain or disputed.)).

Here, the plaintiffs have good cause to dispute the applicability of the forum-selection clause. First, it is the Sponsorship Agreement, not the Merchant Agreement, which primarily governs the parties' relationship. In fact, the parties' agreement to enter into the Merchant Agreement is an express provision of the Sponsorship Agreement. [R. 26 at 5.] The

6

Sponsorship Agreement was the result of cooperative drafting between the parties, whereas the Merchant Agreement is a fill-in-the-blank form that could be (and was) used with a multitude of contractual partners. [R. 12-1; R. 26-1.] The Sponsorship Agreement includes a choice of law provision providing that it "shall be controlled and construed under the internal laws of the Commonwealth of Kentucky," which at least partially contradicts the forum-selection clause in the Merchant Agreement, which includes a choice of law provision favoring the state law of New York. [R. 26-1 at 12.] And finally, the Sponsorship Agreement contains a merger clause in the which the parties agree:

> This Agreement contains every obligation and understanding between the parties relating to the subject hereof and merges and supersedes all prior or contemporaneous discussions, negotiations and agreements, if any, relating to the subject hereof. There are no promises, conditions, undertakings, understandings, warranties or representations, whether written or oral, express or implied, between the parties other than as expressly provided or referred to herein.

[R. 26-1.]

Pivotal argues that it should be given the benefit of its bargain with respect to forum, but it seems unlikely that the forum-selection clause was actually bargained-for. The Sponsorship Agreement purports to be "the result of a collective effort by the parties," and it contains no forum-selection clause, lending credence to Plaintiffs' argument that the Sponsorship Agreement "contains the most accurate reflection of the parties' bargained for rights." The Court agrees with Breeders' Cup that "[t]he Sponsorship Agreement provides that Kentucky law would control its interpretation and is devoid of any forum selection clause—a clear indication that Pivotal did not actually bargain for a New York forum." [R. 18 at 10–11.] This is bolstered by the fact that the forum-selection clause on which defendants rely is not even included in the Merchant Agreement outright, but incorporated by reference to boilerplate Terms and Conditions located on Pivotal's website.

But even if it were clear that the forum-selection clause applied here, *Atlantic Marine* allows the district court to consider whether public interest factors weigh in favor of denying transfer. *Atlantic Marine*, 517 U.S at 64. And although "forum-selection clauses should control except in unusual cases," there is good argument this is one of those unusual cases. Thoroughbred racing is ubiquitous in Kentucky, and Lexington, Kentucky is widely known as "the horse capital of the world." Second only to the bourbon industry, "[Kentucky's] horse industry . . . accounted for total economic output of $5.2 billion and more than 44,000 jobs" in 2018. Randy Tucker, *NKY Wants Bigger Slice of the Bourbon Tourism Pie; Kentucky's Edge Festival Could Help, Promoters Say*, The Enquirer (Oct. 2, 2019) https://www.cincinnati.com/story/money/2019/10/02/kentucky-edge-showcase-bourbon-business-across-northern-kentucky/2439265001/. The Breeders' Cup is a premier event in the horseracing industry. And the 2018 event, which is at the center of the parties' dispute, was held at Churchill Downs in Louisville, Kentucky. It is indisputable that Kentucky's identity is very much wrapped-up in the thoroughbred industry. Considering the prevalence and importance of the thoroughbred industry to Kentucky, the Court finds that the public interest factors weigh against transfer.

**B**

Because it is disputed and ultimately unclear whether the forum-selection clause incorporated by reference into the Merchant Agreement applies to the claims in plaintiffs' complaint, the Court will analyze all of the factors it would ordinarily consider absent a forum-selection clause. These include:

> (1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. Other factors include (1) the relative

> congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties agreed to a forum selection clause.

*Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751, 755 (E.D. Ky. 2005). Most of these factors weigh against transfer. It is obviously more convenient for Breeders' Cup, which has its primary office in Lexington, Kentucky, to litigate in the Eastern District of Kentucky. [R. 18 at 15.] Pivotal, a Delaware corporation with its primary office in Plano, Texas, is likely to be equally inconvenienced by either forum. [R. 26 at ¶ 3.] Non-party witnesses will necessarily include representatives from Churchill Downs, all of whom are located in Kentucky and beyond the subpoena power of New York courts. [R. 18 at 16.] And as already explained, the public interest favors denying the motion for transfer. Kentucky has a sincere interest in local adjudication of this dispute, as the thoroughbred industry and Churchill Downs are economic boons for the state. The Sponsorship Agreements states that Kentucky law is to apply to disputes over the parties' contracts, and of course federal courts in Kentucky are more familiar with local law than the Southern District of New York is likely to be. And finally, this is Plaintiffs' chosen forum. On balance, the Court finds the foregoing factors weigh in favor of DENYING Defendants' Motion to Transfer Venue.

**III**

It is simply not clear to the Court that the forum-selection clause, which Pivotal argues mandates transfer to the Southern District of New York, actually applies to the parties' dispute. Bute even if it did, the public interests at play here are unique, and support a denial of the motion to transfer. The questionable applicability of the forum-selection clause merits the consideration of the typical § 1404 factors. On balance, the Court finds that these factors also weigh in favor

9

of retaining this case in the Eastern District of Kentucky. Accordingly, it is hereby **ORDERED** that Defendant's Motion to Transfer Venue **[R. 11]** is **DENIED**.

This the 3d day of March, 2020.

Gregory F. Van Tatenhove
United States District Judge