UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| BREEDERS' CUP LIMITED and BREEDERS' CUP PROPERTIES, LLC, | ) ) ) |
| | Civil No. 5:19-cv-00113-GFVT |
| Plaintiffs, | ) ) |
| V. | **MEMORANDUM OPINION** **&** **ORDER** |
| NUVEI TECHNOLOGIES, INC., f/k/a PIVOTAL PAYMENTS, INC., | ) |
| Defendant. | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiffs Breeders' Cup Limited and Breeders' Cup Properties, LLC have moved the Court to dismiss Defendant Pivotal Payments, Inc.'s[1] Counterclaim III for failure to state a claim. Breeders' Cup argues that Pivotal's request for declaratory judgment is redundant of the Complaint, and therefore the Court should dismiss it as unnecessary. For the reasons that follow, Breeders' Cup's Motion to Dismiss [R. 14] is GRANTED.

**I**

This suit was initiated following a breakdown of contractual relations between plaintiff Breeders' Cup and defendant Pivotal. The Plaintiffs in this case, Breeders' Cup Limited and Breeders' Cup Properties, LLC (collectively "Breeders' Cup"), are the entities tasked with organizing and hosting the Breeders' Cup racing event. Breeders' Cup Limited "is a not for profit organization existing for the purpose of enhancing Thoroughbred racing through the

---

[1] In the time since the parties first contracted with one another, Pivotal Payments, Inc. has rebranded and currently goes by the name Nuvei Technologies, Inc. However, for the sake of consistency with the underlying documents and Plaintiff's complaint, this Court will continue to refer to the Defendant as Pivotal Payments, or simply Pivotal.

development of public interest in the sport[,]" and the host of the Breeders' Cup World Championships. [R. 26 at ¶ 6.] Breeders' Cup Properties "is an affiliate of [Breeders' Cup Limited] and offers media, hospitality, and other benefits to certain Thoroughbred racing industry sponsors and participants[.]" [R. 26 at ¶7.] Defendant Pivotal Payments, Inc. is a provider of credit card processing services. [R. 26 at ¶ 8.]

On October 2, 2014, the parties entered into a Corporate Partner and Media Agreement (the "Sponsorship Agreement"). [R. 26 at ¶ 10.] The Sponsorship Agreement afforded Pivotal certain rights, including the right to list itself as an "Official Credit Card Processor of the Breeders' Cup." *Id.* at ¶14. Pursuant to the Sponsorship Agreement, the parties also agreed to enter into a separate merchant processing agreement between BCP and Pivotal (the "Merchant Agreement") allowing Pivotal to process certain payments associated with the Breeders' Cup events. [R. 26 at ¶16.] These included "nomination eligibility payments, registration fees for the Breeders' Cup Betting Challenge, and payments for Breeders' Cup Charities." [R. 18 at 4.] Pivotal also entered merchant agreements with other parties; for each Breeders' Cup Championship event from 2014 to 2017, Pivotal contracted with the host tracks for the right to process payments for patron tickets to the events. [R. 26 at ¶ 19.] The Plaintiffs were not party to these merchant agreements. *Id.*

In April 2017, Breeders' Cup announced that the 2018 World Championship event would be held at Churchill Downs in Louisville, Kentucky. [R. 26 at ¶ 20.] Breeders' Cup informed Pivotal that Churchill Downs had an exclusive contract with Ticketmaster for processing patron event tickets, and therefore Pivotal should not expect to enter into a merchant agreement with Churchill Downs for this purpose. *Id.* at ¶ 23. Later, in October 2019, Pivotal informed Breeders' Cup that it viewed the inability to process patron event tickets as a material breach of

2

the parties' Sponsorship Agreement, and that it was terminating the Sponsorship Agreement on that basis. [R. 26 at ¶ 35.]

Breeders' Cup initiated this lawsuit in February, 2019. [R. 1-1.] Breeders' Cup disputes that Pivotal's inability to process patron tickets amounted to a breach of the Sponsorship Agreement, and has filed suit alleging breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. [R. 26.] Pivotal raises four counterclaims in its Answer. [R. 10.] Counterclaim I alleges Breeders' Cup, not Pivotal, breached the Sponsorship Agreement; Counterclaim II alleges that Breeders' Cup, and not Pivotal, breached the Merchant Agreement; and Counterclaim IV alleges that Breeders' Cup breached its implied duty of good faith and fair dealing. *Id.* Before the Court is Counterclaim III, in which Pivotal asks the Court to issue a declaratory judgment finding "that [Pivotal] was entitled to terminate the Sponsorship Agreement as a result of Breeders' Cup's breaches of the Merchant and the Sponsorship Agreement." *Id.* at ¶ 52. Plaintiff argues that Counterclaim III should be dismissed because it "is little more than a denial of Breeders' Cup's Complaint," and "address[es] the same fundamental issues to be decided in this litigation: whether Pivotal or Breeders' Cups breached the parties' relevant agreements." [R. 14 at 6–7.]

**II**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The

Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). See also *Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

## A

Pivotal's third counterclaim seeks a declaratory judgment "that it was entitled to terminate the Sponsorship Agreement as a result of Breeders' Cup's breaches of the Merchant Agreement and Sponsorship Agreement." [R. 10 at ¶ 50.] Breeders' Cup argues that in this instance, declaratory judgment is inappropriate, and Counterclaim III should be dismissed pursuant to the mirror-image rule. [R. 14 at 6.] The mirror-image rule says that "when a counterclaim merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose." *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. 1987). More specifically,

> A counterclaim for declaratory judgment that arises out of a transaction or occurrence other than the one that forms the basis of plaintiff's claim for relief, or presents issues totally unrelated to the main claim, generally poses no special procedural problems. When the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, however, a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it. This would be true if the defendant is adequately protected in terms of the ability to have the issues that are raised by the request for declaratory relief fully adjudicated.

*Boden v. St. Elizabeth Med. Ctr., Inc.*, 2018 U.S. Dist. LEXIS 57434, *29–30 (E.D. Ky. Apr. 4, 2018) (quoting § 1406 Counterclaims and Crossclaims for Declaratory Judgment, 6 Fed. Prac. & Proc. Civ. § 1406 (3d ed.)).

Count I of Breeders' Cup's Complaint alleges breach of the parties' contracts on the part

of Pivotal. [R. 26 at ¶¶ 39–43.] In Counterclaim III, Pivotal asks the Court to issue a finding that it did *not* breach the parties' contracts. [R. 10 at ¶¶ 50–52.] This is precisely the type of counterclaim contemplated by the mirror image rule. *See Stryker Corp. v. Ridgeway*, 2014 U.S. Dist. LEXIS 100803, *3 (W.D. Mich. July 24, 2014) ("In Count 2 of its amended complaint Stryker alleges that Steitzer breached the Non-Compete Agreement . . . . A mirror image of Count 2 would be a request for a declaration that Steitzer did not breach the Non-Compete Agreement[.]"). There is no way around the deciding issue: either Breeders' Cup breached the contracts by failing to secure Pivotal's right to serve as credit card processor for patron tickets, or Pivotal had no such right and breached the contracts itself. Thus, Pivotal is "adequately protected in terms of the ability to have the issues that are raised by the request for declaratory relief fully adjudicated." *Boden*, 2018 U.S. Dist. LEXIS 57434 at *30.

Pivotal argues Counterclaim III is necessary because "[it] is a vehicle through which [Pivotal] will demonstrate the applicability of the Exclusivity Provision in particular — as distinct from [Pivotal's] lack of liability on Breeders' Cup's claims in general." [R. 22 at 3.] If Pivotal wishes to prevail, it ought to demonstrate the applicability of the Exclusivity Provision in its defense to Count I of the Complaint. Pivotal pleads the doctrine of prior breach and states that "Breeders' Cup failed to perform its obligations under the applicable contracts" in its Answer. [R. 10 at 5–6.] It is apparent from the pleadings filed thus far that Pivotal's position is that it was entitled to stop performance, because Breeders' Cup breached the parties' contracts when Pivotal was not made the credit card processor for patron tickets. [R. 10; R. 12; R. 22.] Pivotal also raises the same arguments in Counterclaims I and II, which allege breach by Breeders' Cup of the Sponsorship and Merchant Agreements, respectively. The Court finds that Pivotal's third Counterclaim raises issues "that already have been presented in plaintiff's

5

complaint and defendant's answer to the original claim[.]" *Boden*, 2018 U.S. District LEXIS 57434 at *29. Pivotal will get its chance to adjudicate the exclusivity provision without its redundant counterclaim, which is hereby DISMISSED.

### III

Whether or not Pivotal was contractually guaranteed to be the credit card sale processor for patron tickets will be fully adjudicated when the Court reaches the merits of Breeders' Cup's complaint. The request for declaratory judgment—essentially asking the Court to endorse Pivotal's defenses to the Complaint—is redundant, and serves no real purpose. The rights Pivotal assert in Counterclaim III will be adjudicated regardless. Accordingly, Plaintiffs Motion to Dismiss Counterclaim III **[R. 14]** is **GRANTED**. Defendant's Counterclaim III is **DISMISSED**.

This the 11th day of March, 2020.

Gregory F. Van Tatenhove
United States District Judge