UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| BREEDERS' CUP LIMITED, *et al.*, ) <br> ) <br> Plaintiffs,   ) <br> ) <br> V.   ) <br> ) <br> NUVEI TECHNOLOGIES, INC.,   ) <br> ) <br> Defendant.   ) <br> ) | Civil No. 5:19-cv-00113-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on several housekeeping issues. Previously, the Court granted in part a motion for summary judgment filed by Plaintiff Breeders' Cup. [R. 78.] Finding the briefing to be lacking, the Court stopped short of entering summary judgment on the individual claims in this litigation. *See id.* at 13. The parties have now provided additional guidance on the appropriate disposition of the claims in light of the Court's ruling. [R. 79; R. 81.] Having reviewed the filings, the Court will enter summary judgment in favor of Breeders' Cup on its claim for breach of contract, grant its request for attorneys' fees, and either dismiss or enter summary judgment against all of the remaining claims and counterclaims.

**I**

This litigation includes three claims—breach of contract, unjust enrichment, and breach of the duty of good faith and fair dealing—filed by Breeders' Cup and four counterclaims—two claims for breach of contract, a request for a declaratory judgment, and an allegation of breach of the implied duty of good faith and fair dealing—asserted in answer by Defendant Nuvei Technologies (formerly, and hereinafter, Pivotal Payments). [R. 1-1; R. 10.] The parties filed

cross-motions for summary judgment that myopically focused on the issue of who breached first. [R. 56; R. 60.]

The Court resolved that question, concluding that the contract at issue did not include the right to process payments for ticket sales. [R. 78 at 13.] In 2018, Churchill Downs hosted the Breeders' Cup World Championships and did not use Pivotal to process ticket sales. [R. 58 at 11–12; R. 61-1 at 7–8.] Thereafter, Pivotal neither made its payment under the contract in the fall of 2018, nor any of the remaining payments. [R. 61-1 at 3, 10.] Because Breeders' Cup had no obligation to ensure that Pivotal processed any ticket sales, let alone for a third party, the Court determined that Pivotal breached the parties' contract. [R. 78 at 13.]

Given the paucity of guidance on the remaining claims, the Court asked for further briefing. *Id.* Both parties responded. [R. 79; R. 81.] Full resolution of the cross-motions for summary judgment is now ripe for review.

## II

### A

Several of the outstanding claims are easily resolved. In Count I of the complaint, Breeders' Cup asks for damages for breach of the Sponsorship Agreement. [R. 1-1 at 15.] The Court's prior opinion held that Pivotal breached this contract. [R. 78 at 13.] For the reasons set forth therein, summary judgment will be granted as to this claim. *Id.*

Breeders' Cup is also entitled to prejudgment interest, and potentially post-judgment interest, on Count I. In the Complaint, Breeders' Cup sought prejudgment and post-judgment interest on all its damages. [R. 1-1 at 17.] State law governs awards of prejudgment interest in diversity cases. *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 416 (6th Cir. 2022). Post-judgment interest, on the other hand, is set by statute. *See* 28 U.S.C. § 1961.

2

Under Kentucky law, a claim that is "liquidated," meaning that it is "[m]ade certain or fixed by agreement of parties or by operation of law," requires an award of prejudgment interest "as a matter of course." *New London*, 44 F.4th at 416 (quoting *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W. 2d 136, 141 (Ky. 1991)). A common example of a claim for liquidated damages is "an unpaid fixed contract price." *Nucor Corp.*, 812 S.W.2d at 141. If the plaintiff's damages are liquidated, trial courts "must award 'interest at the legal rate of eight percent (8%) per annum.'" *Osborn v. Griffin*, 865 F.3d 417, 456 (6th Cir. 2017) (quoting *Pursley v. Pursley*, 144 S.W.3d 820, 828 (Ky. 2004)). While the default is to award simple interest, courts have discretion to order that interest be compounded annually. *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010). Compound interest is particularly appropriate where "one party deprived the other of use of its money for several years." *New London*, 44 F.4th at 417 (citing *Reliable Mech., Inc. v. Naylor Indus. Servs.*, 125 S.W.3d 856, 858 (Ky. Ct. App. 2003)).

Breeders' Cup's damages for Count I include $75,000 for a payment due on October 1, 2018, and $75,000 for a payment due in 2019. [R. 61-1 at 3, 10 ¶ 33; R. 60-26 at 6.] These predetermined, contractual payments are a classic example of liquidated damages under Kentucky law. *See Nucor Corp.*, 812 S.W.2d at 141. Pivotal's failure to pay has deprived Breeders' Cup of its money for nearly five years. Accordingly, the Court will award Breeders' Cup prejudgment interest, compounded annually at a rate of eight percent, with statutory interest accruing under 28 U.S.C. § 1961 as of the date of the entry of a judgment on Count I.

Next, both parties agree that the Court's decision requires dismissal of Count II of the Complaint, which seeks damages for unjust enrichment. [R. 1-1 at 16; R. 79 at 3; R. 81 at 3.] Where a party can recover for breach of contract, he has no claim for unjust enrichment. *See*

3

*Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017). Given the Court's decision on the breach of contract claim, Count II has no further viability and will be dismissed.

The Court's prior decision also resolves all four of Pivotal's counterclaims. Because Pivotal was the first party to breach, it cannot maintain an action against Breeders' Cup for failure to perform. *Hodak v. Madison Cap. Mgmt., LLC*, No. 5:07-cv-00005-JMH, 2011 WL 6026705, at *2 n.3 (E.D. Ky. Dec. 5, 2011) (quoting 17A Am. Jur.2d *Contracts* § 606) ("[A] party first guilty of a substantial or material breach of contract cannot complain if the other party subsequently refuses to perform. That party can neither insist on performance by the other party nor maintain an action against the other party for subsequent failure to perform."). Pivotal's status as first to breach also precludes its claim for breach of the duty of good faith. *See Agtech Sci. v. Blue Circle Dev.*, No. 5:19-cv-00118-GFVT, 2020 U.S. Dist. LEXIS 72095, at *5 (E.D. Ky. Apr. 24, 2020) ("a finding that AgTech was the first to breach the Amended Agreement would cast serious doubt on the viability of its breach of the covenant of good faith and fair dealing claim."). The Court will therefore enter summary judgment against Pivotal on its two counterclaims for breach of contract, its request for a declaratory judgment that Breeders' Cup was the first party to breach, and its breach of good faith counterclaim.

B

Resolution of Breeders' Cup's claim for breach of the duty of good faith is less straight forward. In every contract created under Kentucky law, there is an implied duty of good faith and fair dealing. *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). That duty requires parties "to do everything necessary to carry [the contract] out." *Id.* (citing *Beech Creek Coal Co. v. Jones*, 262 S.W.2d 174 (1953)). In other words, "contracting parties are

4

deemed to have promised to 'refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.'" *Back v. Chesapeake Operating, LLC*, No. 7:16-cv-00192-KKC, 2018 WL 737609, at *2 (E.D. Ky. Feb. 6, 2018) (quoting *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp. 2d 629, 636 (E.D. Ky 2012)). "In order to show a violation of the implied covenant of good faith and fair dealing, a showing of breach of contract is ordinarily not required; rather, the party asserting the violation must 'provide evidence to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" *O'Kentucky Rose B. Ltd. v. Burns*, 147 F. App'x 451, 457–58 (6th Cir. 2005) (quoting 23 Williston on Contracts § 63:22 (4th ed. 2004)).

Kentucky allows parties to simultaneously plead, as separate claims, general breach of contract and breach of the implied duty of good faith. *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 817 (E.D. Ky. 2013). However, to recover damages for both breach of the overall contract and breach of the implied duty of good faith, the aggrieved party must show misconduct by his partner that is distinct from the actions that breached the express terms of the contract. *See Back*, 2018 WL 737609, at *3 (misrepresenting profits and expenses for purposes of calculating royalty payments did not establish a separate claim for breach of the implied duty where the breach of contract claim was also premised on express requirement to pay royalties); *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-cv-00045, 2015 U.S. Dist. LEXIS 94372, at *10 (W.D. Ky. July 21, 2015) (dismissing as duplicative good-faith claims based on failure to provided notice and failure to properly terminate where also asserted as breach of contract claims); *Watson v. Progressive Direct Ins. Co.*, No. 5:22-cv-00203-DCR, 2022 U.S. Dist. LEXIS 233630, at *33–35 (dismissing

claims related to calculation of vehicle resale value under an insurance contract as duplicative); *accord Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1126 (8th Cir. 2006) (Missouri law) (refusing to allow double recovery where damages for breach of contract and breach of the implied duty of good faith were based on the same evidence). This rule against duplicative contract claims comports with Kentucky's policy against double recovery. *See Metro Louisville/Jefferson Cnty. Gov't v. Alabama*, 326 S.W.3d 1, 12 (Ky Ct. App. 2009) (quoting 22 Am. Jur. 2d Damages § 35) ("A plaintiff who alleges separate causes of action is not permitted to recover more than the amount of damages actually suffered. There cannot be double recovery for the same loss even though different theories of liability are alleged in a complaint.").

      The parties disagree as to whether the Court's prior ruling forecloses Breeders' Cup's claim for breach of the duty of good faith. [R. 79 at 6.; R. 81 at 4.] Breeders' Cup's claim for breach of contract is premised on Pivotal's failure to make payments required under the contract and its attempt to terminate the agreement without cause. [R. 1-1 at 15.] Likewise, Breeders' Cup asks for damages under the duty of good faith based on Pivotal "refusing to make payments and purporting to terminate the Agreement . . . without due cause." *Id.* at 16. Based purely on the Complaint, these claims appear to stem from the same underlying conduct. *C.f. Back*, 2018 WL 737609, at *3.

      In an attempt to do more, Breeders' Cup weaves a story in which Pivotal conspired to receive its benefits under the contract for as long as possible before breaching its obligation to pay. In early 2017, Breeders' Cup notified Pivotal that it would not process ticket sales for the 2018 Churchill Downs event. [R. 79 at 7.] Pivotal worked with Breeders' Cup throughout the ensuing year as though nothing was amiss. *Id.* Pivotal continued to enjoy some economic benefit from the arrangement, processing credit card transactions related to nominations for

6

Breeders' Cup races, the Breeders' Cup Betting Challenge, and Breeders' Cup Charities. *Id.* All the while, Breeders' Cup alleges that Pivotal's executives were plotting to exit a contract that they no longer viewed as good business. *Id.* at 8.

Breeders' Cup tells a good story, but it does nothing to show why it can recover damages for breach of the overall contract and breach of the implied duty of good faith. Breeders' Cup simply complains that Pivotal received its consideration under the contract but Breeders' Cup did not get paid. *See id.* at 8–9. Whatever Pivotal's motivations were, Breeders' Cup's damages were the same, the loss of the remaining payments under the Sponsorship Agreement. *C.f. Margolies*, 447 F.3d at 1126. Permitting double recovery in this scenario would result in an inappropriate windfall to Breeders' Cup. *C.f. Metro Louisville/Jefferson Cnty.*, 326 S.W.3d at 12. Such gains are better pursued at the racetrack, not in federal court.

### C

Based on the plain language of the Sponsorship Agreement, Breeders' Cup is entitled to recover its reasonable attorneys' fees and expenses incurred as a result of this litigation. In a diversity jurisdiction case, state law governs awards of attorneys' fees. *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011). Under Kentucky law, parties to a contract can bargain for a specific provision that shifts attorneys' fees from one party to another. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 787 (Ky. 2017). To interpret an attorneys' fees provision, "a court may only look to the four corners of an unambiguous contract to determine the parties' intentions." *Boodram v. Coomes*, No. 19-5313, 2019 U.S. App. LEXIS 38284, at *13 (6th Cir. Dec. 23, 2019) (citing *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016)).

In somewhat opaque language, the Sponsorship Agreement states that:

> Pivotal Payments and each of the BC Parties (each an "Indemnitor") each agree to indemnify, defend and hold harmless the other and/or its affiliates, and their respective officers, directors, employees, agents and representatives (each an "Indemnitee") from and against any and all claims, liabilities, costs, expenses, suits, losses, damages, recoveries (including, without limitation, reasonable attorney's fees and disbursements) (collectively, the "Losses") arising out of or in connection with . . . a breach by the Indemnitor of any of its representations, warranties, agreements, obligations or covenants set forth in this Agreement . . . .

[R. 61-2 at 9.] Cutting through the legalese, the meaning of this clause is straightforward. Pivotal agreed to "indemnify" Breeders' Cup against any "costs or expense" including "reasonable attorney's fees" resulting from a breach of the contract. *See Indemnify*, Black's Law Dictionary (11th ed. 2019) (defining the term as "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default . . . ."). Breeders' Cup is, therefore, entitled to "any and all" attorneys' fees generated from this litigation, subject to a reasonableness requirement.

The latter term is no empty statement. Under Kentucky law, an award of attorneys' fees is always subject to a discretionary review for reasonableness by the trial court. *See Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991). Attorneys' fees are not subject to automatic calculation, and "[i]n many cases it would be unreasonable to allow the agreed-upon maximum . . . ." *Id.* Accordingly, the Court decides that attorneys' fees will be awarded but will refer the matter to a United States Magistrate Judge for calculation and review for reasonableness pursuant to 28 U.S.C. § 636(b)(3). *See Callier v. Gray*, 167 F.3d 977, 982–83 (6th Cir. 1999).

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Pursuant to Federal Rule of Civil Procedure 56(f), Summary Judgment is **GRANTED** in favor of the Plaintiffs as to Count I of the Complaint;

2. Count II of the Complaint is **DISMISSED** without prejudice;

3. Count III of the Complaint is **DISMISSED** without prejudice;

4. Pursuant to Federal Rule of Civil Procedure 56(f), Summary Judgment is **GRANTED** against Counterclaims I, II, III, and IV asserted in the Defendant's Answer;

5. Trial in this matter is **CANCELLED**;

6. Breeders' Cup's Motion in Limine **[R. 55]** is **DENIED** as moot;

7. Judgment in favor of Plaintiffs Breeders' Cup Limited and Breeders' Cup Properties, LLC, on Count One of the Complaint and against Defendant Nuvei Technologies, Inc., on Counterclaims I, II, III, and IV will enter promptly; and

8. This matter is **REFERRED** to Magistrate Judge Matthew Stinnett to prepare a Report and Recommendation as to an appropriate award of reasonable attorneys' fees pursuant to 28 U.S.C. § 636(b)(3). *See Callier v. Gray*, 167 F.3d 977, 982–83 (6th Cir. 1999).

This the 18th day of September 2023.

Gregory F. Van Tatenhove
United States District Judge